HOLDRIDGE, J.
This appeal arises from a trial court judgment partitioning the community property formerly existing between Heather Leigh Berthelot and Jeffrey[1] Mikal Berthelot. For the reasons that follow, we *805 affirm in part and reverse in part the trial court judgment.
FACTS AND PROCEDURAL HISTORY
Heather Leigh Berthelot and Jeffrey Mikal Berthelot were married on July 10, 1999. On July 14, 2010, Jeffrey filed a petition for divorce. The parties' divorce became final on January 23, 2012. However, the parties resumed cohabitating until October 2014 at a home in Autumn Run Subdivision (Autumn Run Subdivision home) in Tangipahoa Parish.[2] Heather filed a petition for partition of community property on November 3, 2014. Heather also filed a detailed descriptive list evidencing the parties' community assets, listing movable and immovable properties and several reimbursement claims. Particularly, the detailed descriptive list revealed that the parties owned immovable property consisting of three tracts of rental properties in Ponchatoula, Louisiana. Those rental properties consisted of a mobile home on .5 acres located at 20296 Sisters Road, a mobile home located on 1.6 acres located at 20302 Sisters Road, and a mobile home located on .5 acres at 20308 Sisters Road.[3] All three properties were subject to one single mortgage. The tenant living at 20296 Sisters Road had been behind on his rent for two years as of the time of trial.
On April 17, 2015, the parties entered into a stipulated judgment, granting Jeffrey use of the 2007 Ford F-250 Super Duty King Ranch truck until the community property partition and he had to provide monthly accounting of any sums received and expenses paid associated with the community rentals by the 15th of each month.
On August 12, 2015, the parties submitted a joint detailed descriptive list of all their community property to the trial court. The joint detailed descriptive list revealed numerous reimbursement claims Heather made against Jeffrey including: (1) use of community funds from the sale of their previous home in Weinberger Trace for the purchase of the Autumn Run Subdivision home which became Jeffrey's separate property; (2) use of the remaining community funds from the sale of the Weinberger Trace home for the Autumn Run Subdivision home; (3) use of Heather's separate funds for the improvements to the Autumn Run Subdivision home; and (4) profits from the rental properties received by Jeffrey after July 14, 2010.[4]
A trial was held on November 3, 2016 on the parties' partition of community property and reimbursement claims. Following testimonial and documentary evidence presented, the matter was taken under advisement. The trial court signed its reasons for judgment on December 8, 2016. On January 31, 2017, the trial court signed a judgment, awarding Heather .5 acres and mobile home located on 20296 Sisters Road valued at $45,000.00 and .5 acres and mobile home located on 20308 Sisters Road valued at $62,000.00. Jeffrey was awarded 1.6 acres and mobile home located at 20302 Sisters Road valued at $65,000.00. The trial court ordered that each party was responsible for their proportionate share of the mortgage on the immovable properties *806 awarded, and the mortgage had to be refinanced within 90 days from when the judgment was rendered. The trial court further awarded Heather the accounts receivable owed by the tenant at the 20296 Sisters Road property in the amount of $3,615.39. Jeffrey was awarded the 2007 Ford F-250 Super Duty King Ranch truck valued at $9,000.00. The trial court denied Heather's reimbursement claim for the Autumn Run Subdivision home, stating in its reasons for judgment "[b]y prior agreement between the parties ... Jeffrey bought Heather out of the Autumn Run Subdivision home for $45,000.00.... Therefore no reimbursement [was] warranted." The trial court awarded Jeffrey reimbursement in the sum of $12,875.00 for Heather's use of the funds from his separate account for her own personal needs. The trial court further ordered Jeffrey to reimburse Heather for the net rental income from the rental properties owned by the community from the time of the final separation of the parties in October 2014 through the date of the trial in the sum of $6,006.35, reimbursable at one-half, totaling $3,003.18.[5]
Heather filed a motion for new trial and it was denied by the trial court. A written judgment was signed on April 4, 2017. Heather subsequently appealed the January 31, 2017 judgment and the April 4, 2017 judgment denying her motion for new trial. On July 31, 2017, this court ex proprio motu issued a rule to show cause order, observing that it appeared the appeal is untimely. On December 7, 2017, another panel of this court maintained the appeal.
APPLICABLE LAW
When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a community property partition. La. R.S. 9:2801(A).
The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties. La. R.S. 9:2801(A)(4)(a). The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value. La. R.S. 9:2801(A)(4)(b). The court shall allocate or assign to the respective spouses all of the community assets and liabilities. La. R.S. 9:2801(A)(4)(c). In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. La. R.S. 9:2801(A)(4)(d).
A trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. McDaniel v. McDaniel, 35,833 (La. App. 2 Cir. 04/03/02), 813 So.2d 1232, 1235. An appellate court may not set aside a trial court's finding of fact unless it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Where there is conflict in the testimony, *807 reasonable evaluations of credibility and reasonable inferences of fact, the determination of the trial court should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id.
Under Louisiana law, property of married persons is generally characterized as either community or separate. La. C.C. art. 2335. Property in the possession of a spouse during the existence of the community property regime is presumed to be community, but either spouse may rebut the presumption. See La. C.C. art. 2340. The spouse seeking to rebut the presumption bears the burden of proving the property is separate in nature. Corkern v. Corkern, 2005-2297 (La. App. 1 Cir. 11/3/06), 950 So.2d 780, 785, writ denied, 2006-2844 (La. 2/2/07), 948 So.2d 1083. A trial court's findings regarding the nature of property as community or separate is a factual determination subject to manifest error review. Moise v. Moise, 2006-876 (La. App. 5 Cir. 3/13/07), 956 So.2d 9, 12.
In the instant matter, Heather asserts that the trial court committed legal errors which interdicts the fact-finding process, and therefore, the de novo standard of review applies. Where one or more legal errors by the trial court interdict the fact-finding process, the manifest error standard is no longer applicable. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Pruitt v. Brinker, Inc., 2004-0152 (La. App. 1 Cir. 2/11/05), 899 So.2d 46, 49, writ denied, 2005-1261 (La. 12/12/05), 917 So.2d 1084. For the reasons that follow, we do not find that the trial court applied incorrect principles of law, and therefore, we review this matter under the manifest error standard of review. See Caballero v. Caballero, 2015-1119 (La. App. 1 Cir. 4/27/16), 2016 WL 2840572, at *4 (unpublished), writ denied, 208 So.3d 376 (La. 2016).
DISCUSSION
Rental Property Reimbursement
When a spouse uses separate funds to pay a community obligation, that spouse is entitled upon termination of the community to reimbursement for one-half of the amount paid. La. C.C. art. 2365. The burden of proof is on the party claiming reimbursement. Corkern, 950 So.2d at 787. A trial court's findings as to whether reimbursement claims have been sufficiently established are reviewable under the manifest error standard. Id.
In her first assignment of error, Heather argues that the uncollected rent from the rental property located at 20296 Sisters Road accumulated to the sum of $3,615.39 as a result of Jeffrey's mismanagement following the termination of the community. Heather argues that the unpaid rent resulted from Jeffrey failing to evict the tenant. However, after reviewing the record we have found that no petition for mismanagement, bad faith, or fraud was ever filed in the record. "In pleading fraud or mistake, the circumstances constituting fraud or mistake shall be alleged with particularity." La. C.C.P. art. 856. It appears from the record that Heather did not make a claim of mismanagement until she filed her post-trial memorandum, violating La. C.C.P. art. 856 and La. C.C. art. 2354.[6] Therefore, Heather's mismanagement claim was not before the trial court.
*808 The trial court only handled the parties' partition and reimbursement claims and did not address Heather's claim that Jeffrey mismanaged the community property. See Cooper v. Cooper, 619 So.2d 1210 (La. App. 1 Cir. 1993), writ denied, 625 So.2d 1042 (La. 1993).
Because Heather did not allege her mismanagement claim until the filing of her post-trial memorandum, and thus failed to plead the issue with specificity or particularity as required by La. C.C.P. art. 856 and La. C.C. art. 2354, we find that the trial court properly disregarded the claim and similarly, we will only consider Heather's partition of community property and reimbursement claims. See Carrier Corp. v. Cousins, 2015-24 (La. App. 5 Cir. 5/14/15), 170 So.3d 1168, 1176 ; Goines v. Goines, 2009-994 (La. App. 5 Cir. 3/9/11), 62 So.3d 193, 199, writ denied, 2011-0721 (La. 5/20/11), 63 So.3d 984 ; Monje v. Monje, 94-622 (La. App. 5 Cir. 12/28/94), 648 So.2d 1086, 1090. This assignment of error has no merit.
In her second assignment of error, Heather argues that the trial court erred in awarding her as an asset the uncollected rent from the property located at 20296 Sisters Road in the sum of $3,615.39. Heather argues that the trial court should have awarded the uncollected rent to Jeffrey because he was "responsible for it" and in turn, increase her equalizing payment.
In deciding to whom an asset or liability shall be allocated, the court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances the court deems relevant. La. R.S. 9:2801(A)(4)(c). The trial court's allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. Legaux-Barrow v. Barrow, 2008-530 (La. App. 5 Cir. 1/27/09), 8 So.3d 87, 90, writ not considered, 2009-0447 (La. 4/13/09), 5 So.3d 152.
It is evident from the record that both parties were aware of the tenant's past due rent that was accumulating while they resided together after their divorce. In allocating community assets, the trial court has great discretion to divide a particular asset equally or unequally or to allocate it in its entirety to one of the spouses. Gay v. Gay, 31,974 (La. App. 2 Cir. 6/16/99), 741 So.2d 149, 151. The record reveals that the majority of the past due rent from the tenant accumulated during the time that the parties cohabitated together after their divorce when they managed the rental property together. As of October 2014, when the parties stopped cohabitating together, the tenant had an unpaid balance of $2,835.06 and the trial court valued the asset at $3,615.39. Thus, it appears the trial court fairly allocated the community asset. Therefore, we cannot say that the trial court abused its discretion in allocating the uncollected rent owed by the tenant to Heather as the trial court's valuation of the community asset is reasonably supported by the record and allocated in accordance with the applicable law.
Furthermore, in her seventh assignment of error, Heather argues that the trial court erred in only awarding her reimbursement for the rental proceeds from the rental properties that accrued after the parties' final separation in October of 2014. Heather argues that the trial court denied her more than two years of reimbursement because she cohabited with Jeffrey following their divorce until October 2014. Heather argues that the record lacks evidence that Jeffrey used the rental proceeds for the mutual benefit of both parties. Jeffrey counters that Heather is not entitled to reimbursement for the rental *809 proceeds for the years 2012-2014 because she did not introduce evidence to show that the rental proceeds were not used for the mutual benefit of the parties during that time.
Our review of the testimony reveals that both parties were involved in the management of the rental properties while living together during the pendency of their divorce and thereafter. The documentary and testamentary evidence indicate that Heather and Jeffrey maintained separate bank accounts, in addition to one joint checking account. Jeffrey testified that Heather routinely handled their finances, even after their divorce was granted while they continued cohabitating together. Jeffrey further testified that Heather handled the rental properties records, including paying bills, until their final separation in October 2014. Heather's testimony revealed that although she managed the parties' finances after their divorce until their final separation in October 2014, Jeffrey deposited money weekly into a joint bank account so that bills could be paid. Jeffrey covered the majority of expenses for the family from his personal bank account until October 2014.
After reviewing the evidence, the trial court determined that Heather was only entitled to reimbursement for the rental proceeds for the time period after the parties' final separation in October 2014 through the date of the trial. In its reasons for judgment, the trial court stated, in pertinent part:
By the parties['] testimony, they attempted reconciliation post-divorce by residing together. During this time period, the parties continued to receive monies from their rental propert[ies] which they testified that Jeffrey collected. Jeffrey testified that until their final separation in October 2014, the monies received were used for both of their enjoyment. During this time the parties were together, Heather was aware of Jeffrey's actions and did not request that the monies be handled in any other manner. Accordingly, the court hereby finds that the total net income from the rental properties to be $6,006.35 of which Heather is entitled to a reimbursement of $3,003.18.
From our review of the record, the trial court was presented with an abundance of evidence from which it could determine that Heather was only entitled to reimbursement for the rental proceeds after the parties' final separation in October 2014 until the date of trial. Although Heather introduced into evidence rental check ledgers of the three rental properties that showed a record of the rental properties payments, she testified that the rental check ledgers were not an accurate reflection of the amounts received for the rental proceeds from 2010 until 2014. Thus, the record is devoid of any evidence or testimony establishing that the rental properties proceeds were used for Jeffrey's sole benefit from 2012-2014. Therefore, we find no error in the trial court's judgment, which determined from the testimonies of the parties, that Heather did not meet her burden of proving that she was entitled to reimbursement for the rental properties proceeds from 2012-2014. A trier of fact is free to believe in whole or part the testimony of any witness. Pennison v. Carrol, 2014-1098 (La. App. 1 Cir. 4/24/15), 167 So.3d 1065, 1076, writ denied, 2015-1214 (La. 9/25/15), 178 So.3d 568. The trial court was free to believe the testimonies of the parties that the rental properties proceeds were used for the parties' mutual benefit for the years 2012-2014. For these reasons, the trial court did not err in only awarding Heather reimbursement for the rental proceeds from the time of the parties' final separation in October *810 2014 until the date of trial. This assignment of error has no merit.
Autumn Run Subdivision home Reimbursement
On January 22, 2007, Heather sold her undivided community interest in the Autumn Run Subdivision home to Jeffrey for $45,000.00 in a cash deed sale. In her third and fourth assignments of error, Heather argues that the trial court erred in finding that Jeffrey used his separate funds to purchase Heather's interest in the Autumn Run Subdivision home because no evidence showed that such separate funds existed at the time of the sale. Heather argues that Jeffrey purchased her interest in the home using funds from the sale of their prior home in Weinberger Trace. Therefore, Heather argues that she should be reimbursed $22,500.00, which is one-half of the community funds Jeffrey used to purchase Heather's interest in the Autumn Run Subdivision home. Heather further argues that the only evidence Jeffrey introduced to prove that the funds were his separate property was his own "wholly equivocal, contradictory, and self[-]serving testimony[.]" Thus, Heather argues that "the presumption that the funds used to pay [her] were community funds prevails."
Jeffrey counters that he used the funds from a construction loan he obtained for the Autumn Run Subdivision home to purchase Heather's interest in the property. Jeffrey argues that the trial court correctly denied Heather's reimbursement claim because his testimony at trial provided evidence of the source of the funds used to purchase Heather's interest in the Autumn Run Subdivision home. Therefore, Jeffrey urges because Heather did not provide any evidence that the funds used to purchase her interest were community property, the presumption of community does not apply.
Property possessed by a spouse during the existence of the community property regime is presumed community, although either spouse may prove it to be separate property. La. C.C. art. 2340. The natural and civil fruits of separate property are community property; however, a spouse may reserve them as separate property by a declaration made in authentic form effective from the date the declaration is filed in the public records. La. C.C. art. 2339 ; Dupree v. Dupree, 41,572 (La. App. 2 Cir. 12/20/06), 948 So.2d 254, 256.
The burden of proof is on Heather making the reimbursement claim. Heather relies upon the presumption contained in La. C.C. art. 2340, which provides that "[t]hings in the possession of a spouse during the existence of a regime of community of acquets and gains are presumed to be community, but either spouse may prove that they are separate property." (Emphasis added.) "A 'presumption' is an inference created by the legislature that the trier of fact must draw if it finds the existence of the predicate fact unless the trier of fact is persuaded by evidence of the nonexistence of the fact to be inferred." (Emphasis added). La. Code Evid. art. 302(3) ; Talbot v. Talbot, 2003-814 (La. 12/12/03), 864 So.2d 590, 598. In other words, in order for a presumption to apply, the evidence presented must first establish the predicate fact. A plain reading of La. C.C. art. 2340 indicates that the predicate fact that the evidence must establish in order for the presumption of community to apply, is that the "things," the characterization of which is in dispute, must have been in "the possession of a spouse during the existence of a regime of community of acquets and gains." Vedros v. Vedros, 2016-735 (La. App. 5 Cir. 10/25/17), 229 So.3d 677, 685, writ denied, 2017-02119 (La. 2/23/18), 237 So.3d 1185, and writ denied, *811 2018-0004 (La. 2/23/18), 237 So.3d 520. The community presumption contained in article 2340 is rebuttable by either spouse upon a showing by a preponderance of the evidence the separate nature of property brought into the community. Talbot, 864 So.2d at 600.
We now must determine from the record whether Jeffrey proved by a preponderance of the evidence the separate nature of the funds used to purchase Heather's interest in the Autumn Run Subdivision home. See Ross v. Ross, 2002-2984 (La. 10/21/03), 857 So.2d 384, 390. At trial, Jeffrey testified that the cash deed sale was executed on January 22, 2007, and he executed the construction loan that secured the Autumn Run Subdivision home on January 25, 2007. On January 26, 2007, both the cash deed sale and the construction loan were recorded in the clerk of court's office in Tangipahoa Parish. Jeffrey further testified that his only bank account having $45,000.00 in in it at that time of the sale was his construction loan.
Heather testified that she received $45,000.00 from Jeffrey at the time of the execution of the cash deed sale and she deposited the money into a checking account with Florida Parishes Bank. However, Heather could not recall taking a check and depositing it into a bank account on January 22, 2007. The record reveals that Heather opened a bank account on January 31, 2007, and transferred $45,000.00 into an opened bank account from another bank account.
It appears from the record that both parties could not recall the specific details as to the distribution of funds to Heather after the cash deed sale was executed on January 22, 2007. Jeffrey has no recollection of what account Heather deposited the $45,000.00 into from the cash deed sale. Heather testified that the $45,000.00 went into a checking account; however, she could not recall receiving the $45,000.00 from Jeffrey on January 22, 2007. Throughout Heather's testimony, she was unable to provide the trial court with any definite statements regarding if she received the $45,000.00 payment on the day the cash deed sale was executed or introduce any evidence showing that she received those funds on January 22, 2007.
Jeffrey testified that in order to make the property his separate property, the bank required him to pay Heather for her interest in the Autumn Run Subdivision home with his separate funds. This was evidenced by the cash deed's terms stating that Jeffrey was purchasing Heather's interest in the Autumn Run Subdivision home and "[b]y virtue of this transfer, th[e] property [became] the separate property of Jeffrey ... and no longer ... community property." Jeffrey further testified that it would be illogical for Heather to allow him to purchase her interest in the home with funds that were half hers, essentially giving her money back to her.
After our review of the record, we have determined that the trial court did not error in finding that Jeffrey established by a preponderance of the evidence that Jeffrey used his separate funds to purchase Heather's interest in the Autumn Run Subdivision home. Because Heather's testimony was not definitive as to the source of the funds, we find no error in the trial court's findings that Jeffrey proved by a preponderance of the evidence that he used his separate funds to purchase Heather's interest in the Autumn Run Subdivision home. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, establishes that the fact or causation sought to be proved is more probable than not. Talbot, 864 So.2d at 600. Given the great deference to the trial court's factual findings based on credibility determinations, we cannot say that the *812 trial court was manifestly erroneous in finding that Jeffrey overcame the community presumption by a preponderance of the evidence in proving that he acquired Heather's interest in the Autumn Run Subdivision home using his separate funds, thereby denying Heather's reimbursement claim. See La. C.C. art. 2340 ; Vedros, 229 So.3d at 687. Therefore, we find the trial court did not err in determining that Heather was not entitled to reimbursement. This assignment of error has no merit.
Furthermore, Heather argues that the trial court erred in considering Jeffrey's testimony to negate the terms of the cash deed sale, violating the parol evidence rule. Specifically, Heather argues that Jeffrey's testimony was inadmissible to determine the timing of the distribution of the funds from the cash deed sale, which stated that "$45,000.00 ... cash in hand [was] paid[.]" (Ex. D#l) Heather relies on La. C.C. arts. 1835 and 1848, which set forth Louisiana's rule on parol evidence, to argue that because the cash deed sale between the parties was an authentic act, Jeffrey's testimony is not admissible to vary its terms. Jeffrey counters that an exception to the parol evidence rule applies to the instant matter, stating "in the interest of justice ... evidence may be admitted to prove ... that the written act was modified by a subsequent and valid oral agreement." La. C.C. art. 1848.
Under Louisiana law, there are some judicially carved exceptions to the above rule that permit courts to admit parol evidence when a written contract is at issue. In the interest of justice, parol evidence is admissible to show fraud, mistake, illegality, want or failure of consideration, and to explain an ambiguity when such explanation is not inconsistent with the written terms. See M.G. Mayer Yacht Services. Inc. v. Ryder, 2003-2225 (La. App. 1 Cir. 10/29/04), 897 So.2d 72, 74. The trial court is granted broad discretion in determining the admissibility of parol evidence. Talbot, 864 So.2d at 602.
It is evident from the record that due to the conflicting nature of the parties' testimonies regarding how and when Heather received the $45,000.00 from the cash deed sale, the trial court allowed Jeffrey's limited testimony to assist it in determining the source of the funds in order to determine if a subsequent oral agreement between the parties varied the terms of the authentic act. Under the circumstances of this case, we find the trial court did not abuse its discretion in allowing Jeffrey's limited testimony in order to determine the classification of those funds.[7] Accordingly, the trial court did not violate the parol evidence rule in allowing the testimony of Jeffrey for the purposes of determining the classification of the funds. This assignment of error has no merit.
Other Reimbursement Claims
Additionally, in her sixth assignment of error, Heather argues that the trial court erred in awarding Jeffrey reimbursement in the sum of $12,875.00[8] for three checks that were written, payable to cash, and endorsed by Heather from Jeffrey's separate bank account. Heather argues that Jeffrey should not have been reimbursed the full sum of $12,875.00 because *813 all three checks were written during the community and were not proven to have been used for her separate needs. Therefore, Heather argues that the trial court should have only awarded Jeffrey reimbursement for one-half of the sum of the three checks, totaling $6,437.50.
Jeffrey had the burden of proving his entitlement to reimbursement by showing that the funds were taken from his separate account that was controlled and managed exclusively by him and used for Heather's separate obligations. An obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation. La. C.C. art. 2360. A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. La. C.C. art. 2363. If a spouse uses separate property during the existence of the community property regime to satisfy the separate obligation of the other spouse, the spouse whose property was used is entitled to reimbursement for the amount or value the property had at the time it was used. La. C.C. art. 2367.3.
After reviewing the record, we have found that Jeffrey failed to introduce evidence that traced how and when Heather spent the funds. Besides Heather's equivocal testimony, in which she acknowledged that she wrote and endorsed all three checks, no other evidence was introduced to prove how the funds were used. Although Heather lacked knowledge as to what specific transactions the funds were used for, it was Jeffrey's burden to prove the source of the funds. All three checks had no indication on them for what type of obligation the funds were used for and Jeffrey offered no receipts into evidence to provide the trial court with evidence that the funds were used for Heather's separate obligations. Therefore, we find that Jeffrey failed to meet his burden of proving that he was entitled to the full reimbursement for the sums of the three checks that Heather cashed from his separate bank account that were allegedly used to satisfy her separate obligations as opposed to community obligations. Accordingly, we find that Jeffrey should only be awarded reimbursement for one-half of the sum of the three checks, totaling $6,437.50. We reverse that portion of the trial court judgment which ordered that Jeffrey was entitled to reimbursement for the full sum of $12,875.00.
Heather argues in her eighth assignment of error that that the trial court erred in failing to award her reimbursement for Jeffrey's use of her separate funds for the construction of the Autumn Run Subdivision home following the termination of the community. Heather argues that the parties stipulated that Heather was entitled to reimbursement in regard to item No. 28A at trial, totaling $3,630.13, representing one-half of her separate funds that were transferred into the parties' joint bank account during their marriage. She further argues that this was evidenced in the parties' joint detailed descriptive list submitted by the parties that claimed reimbursement for "Separate Funds of Heather's transferred to Joint Account[.]" Heather argues that because the parties submitted into evidence a joint detailed descriptive list, each stipulation had the effect of a judicial admission or confession.
In opposition, Jeffrey argues that Heather is not entitled to additional reimbursement for Item No. 28A because her claim is duplicative of two other reimbursement *814 claims that the trial court granted to her for the use of her separate funds for improvements made on the Autumn Run Subdivision home. Specifically, Jeffrey argues that Heather was awarded reimbursement for Item Nos. 26 and 27 on the parties' joint detailed descriptive list, which claimed reimbursement for use of Heather's separate funds for Jeffrey's separate property. Therefore, Jeffrey argues that "the stipulation ... should not be treated as a judicial confession and [it] was properly revoked by the trial court on the ground of error fact."
In its reasons for judgment, the trial court denied Heather's request for reimbursement for Item No. 28A stating that "[t]he court finds that this request is duplicative of the request for reimbursement already awarded in Item No. 26 and No. 27. Accordingly, this request is denied." Thus, the trial court found it was factual error to reimburse Heather duplicative funds and denied her claim.
After reviewing the record as a whole, we find that there does not appear to be any testimony relating to Item Nos. 26 and 27 of the parties' joint detailed descriptive list, as those items were stipulated to prior to trial. However, regarding Item No. 28A, Jeffrey acknowledged during trial that the parties stipulated that Heather would be awarded reimbursement in the amount of $3,630.13. A stipulation acts as a judicial admission or confession which is binding on all parties by the court. Cordon v. Parish Glass of St. Tammany, Inc., 2015-1078 (La. App. 1 Cir. 4/15/16), 195 So.3d 109, 112, writ denied, 2016-0896 (La. 9/6/16), 205 So.3d 918. A judicial confession is indivisible and may be revoked only on the ground of error of fact. La. C.C. art. 1853. We find no evidence in the record to support that there was an error of fact with regard to the parties' stipulation. Thus, it appears the trial court erred in finding that Heather's reimbursement claim for No. 28A was duplicative of Nos. 26 and 27. Therefore, we find that Heather should be reimbursed in the sum of $3,630.13.
Non-Reimbursement Claims
In her fifth assignment of error, Heather argues that the trial court abused its broad discretion in awarding her two tracts of the immovable property and one tract to Jeffrey that were subject to a single mortgage. Jeffrey counters that trial court acted within its broad discretion in dividing the tracts of immovable property so that each party would receive an equal net distribution of property.
It is well settled that a trial court has broad discretion in adjudicating issues raised by divorce and partition of the community regime. Kambur v. Kambur, 94-775 (La. App. 5 Cir. 3/1/95), 652 So.2d 99, 101-02. The trial judge is afforded a great deal of latitude in arriving at an equitable distribution of the assets between the spouses. Kambur, 652 So.2d at 102. Louisiana Revised Statutes 9:2801 provides the procedure for judicial partitions of community property and settlement of claims after dissolution of the marriage. Louisiana Revised Statutes 9:2801(A)(4) provides, in pertinent part:
* * * *
(b) The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value.
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and *815 source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability.
In accordance with La. R.S. 9:2801(A)(4), the trial court shall divide the assets and liabilities of the parties as equal as possible, and in order to do this the trial court may divide an asset equally or unequally or may allocate it in its entirety to only one of the spouses. Here, the trial court determined that in order for the parties to receive an equal net value, the immovable property needed to be divided and not allocated solely to one party. In dividing the tracts of immovable property, the trial court followed the procedure mandated by La. R.S. 9:2801. Therefore, we find no abuse of the trial court's discretion in awarding Heather two tracts of the immovable property and one tract to Jeffrey subject to the same mortgage. This assignment of error has no merit.
Additionally, Heather argues that the trial court failed to consider her economic condition when dividing the immovable property between the parties in accordance with La. R.S. 9:2801(A)(4). Heather asserts that the trial court failed to consider that she has not been employed for many years resulting in her inability to satisfy her portion of the mortgage on the tracts of land awarded to her by the trial court.
We have reviewed the testimony and evidence and cannot say that the trial court abused its discretion in dividing the tracts of immovable property between the parties in accordance with La. R.S. 9:2801(A)(4)(c) so that each party received an equal net value. Pursuant to La. R.S. 9:2801(A)(4)(c), the trial court has the authority to allocate an asset equally or unequally. Considering the allocation as a whole, we will not disturb the trial court's allocation of the tracts of immovable property, as it conforms to La. R.S. 9:2801(A)(4)(c). Moreover, we note that the rental properties have the potential to generate income for Heather and can be used to cover the mortgage. This assignment of error has no merit.
Furthermore, in her ninth assignment of error, Heather argues that the trial court erred in failing to reimburse her for one-half of the expert witness fees. Specifically, Heather argues that she is entitled to reimbursement for one-half of the fees she paid in hiring an appraiser to appraise the three tracts of immovable property.
The record reveals that Tommie McMorris was hired by Heather as an expert to perform real estate valuation appraisals on the three tracts of immovable property owned by the community. Tommie's reports were introduced into evidence and the trial court adopted his opinion as to the value of the property as its factual finding. Jeffrey also hired an appraiser to appraise the three tracts of immovable property and the appraisal reports were introduced into evidence. Like Heather, Jeffrey paid appraisal fees. Neither parties' expert testified at trial.
The trial court is charged with fixing expert witness fees under La. R.S. 13:3666. The expert fees to be awarded are largely within the sound discretion of the trial court and will not be disturbed on appeal absent a clear abuse of that discretion. Board. of Sup'rs of La. State University v. Boudreaux's Tire & Auto Repair, L.L.C., 2013-0444 (La. App. 4 Cir. 3/5/14), 133 So.3d 1262, 1273, writ denied, 2014-0942 (La. 8/25/14), 147 So.3d 1118. This award may include fees for preparatory, non-testifying expenses. Id. (Emphasis *816 added.) As to expert witness fees in particular, La. R.S. 13:3666(B) provides:
The court shall determine the amount of the fees of said expert witnesses which are to be taxed as costs to be paid by the party cast in judgment either:
(1) From the testimony of the expert relative to his time rendered and the cost of his services adduced upon the trial of the cause, outside the presence of the jury, the court shall determine the amount thereof and include same.
(2) By rule to show cause brought by the party in whose favor a judgment is rendered against the party cast in judgment for the purpose of determining the amount of the expert fees to be paid by the party cast in judgment, which rule upon being made absolute by the trial court shall form a part of the final judgment in the cause.
In the instant matter, both parties obtained appraisals of the three tracts of immovable property at their own cost and the appraisals were entered into evidence. Heather's own testimony reveals that the parties never stipulated that Jeffrey would pay one-half of the cost for her expert's appraisals. We find that the trial court did not abuse its discretion in denying Heather's reimbursement claim for one-half of the expert witness fees, as each party was responsible for their own expert witness fees. See Trahan v. Trahan, 2010-0109 (La. App. 1 Cir. 6/11/10), 43 So.3d 218, 234, writ denied, 2010-2014 (La. 11/12/10), 49 So.3d 889. This assignment of error has no merit.
Lastly, in her tenth assignment of error, Heather argues the trial court abused its discretion in using Jeffrey's testimony to value the 2007 Ford F-250 Super Duty King Ranch truck. As a result, she argues that the trial court valued the truck "significantly less than the independent valuations of the vehicle[.]" Heather argues that the truck "should have been assigned the higher value attributed to it by [her] independent evidence[.]" In support of her argument, Heather introduced into evidence the valuations of the truck through the National Automobile Dealer's Association (NADA) and Kelley Blue Book. Kelley Blue Book valued the truck at $11,525.00 and NADA valued the truck at $15,875.00 for an average trade-in and $17,100.00 for a clean trade-in.
Jeffrey argues that the trial court did not abuse its discretion in its valuation of the truck. To support his position, Jeffrey offered into evidence the purchase agreement he had obtained from one of the automotive dealerships stating that the trade-in value of the truck was $9,000.00. Jeffrey testified that he received an estimate from two automotive dealerships for the trade-in value of his truck for the sum of $7,000.00 and $9,000.00. Jeffrey further testified that as of the date of the trial, the truck had not been traded in.
In valuing assets, the trial court is not required to accept, at face value, the valuation placed on assets by either spouse. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. Sherrod v. Sherrod, 97-907 (La. App. 5 Cir. 3/25/98), 709 So.2d 352, 355, writ denied, 98-1121 (La. 6/5/98), 720 So.2d 687. After reviewing the evidence, the trial court valued the truck based upon the purchase agreement[9] admitted into evidence valuing the truck at $9,000.00. The trial court did not limit itself to the NADA or Kelley Blue Book valuations, but instead valued the *817 truck based upon its own assessment of the testimonies and evidence presented. See Clark v. McNabb, 2004-0005 (La. App. 3 Cir. 5/19/04), 878 So.2d 677, 681. A trier of fact is free to believe in whole or part the testimony of any witness. Pennison, 167 So.3d at 1076. Thus, we find that the trial court's valuation assigned to the truck in the sum of $9,000.00 is supported by the record and does not constitute an abuse of its discretion. This assignment of error has no merit.
CONCLUSION
For the foregoing reasons, we reverse the portion of the trial court judgment allowing reimbursement to Jeffrey Mikal Berthelot for the full sum of $12,875.00. We find that Jeffrey Mikal Berthelot should only be reimbursed one-half of that amount, totaling $6,437.50. Additionally, we reverse the portion of the trial court judgment denying Heather Leigh Berthelot reimbursement in the sum of $3,630.13. The trial court judgment is affirmed in all other respects. Costs of the appeal are assessed evenly between the parties.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
Penzato, J. concurs

We use the spelling set forth in the parties' petition, but note that during these proceedings the parties have also used the spelling "Jeffery."

Jeffrey moved out of the family home for one year after their divorce, but moved back in the Autumn Run Subdivision home at the end of 2012.

The detailed descriptive list valued the rental properties as follows: 20302 Sisters Road $67,000.00; 20308 Sisters Road $62,000.00; 20296 Sisters Road $56,000.00.

We note that the parties listed additional claims for reimbursement that are not appealed in the instant matter.

We note that the trial court awarded additional reimbursements to the parties that are not appealed in the instant matter.

Louisiana Civil Code article 2354 provides "[a] spouse is liable for any loss or damage caused by fraud or bad faith in the management of the community property."

We note Heather's objection to Jeffrey's testimony and that the trial court overruled her objection to allow Jeffrey's limited testimony for the purposes of explaining the classification of the funds.

The three checks from Jeffrey's construction account written and endorsed by Heather were check # 2074 written May 25, 2007 for $5,000.00; check # 3000 written June 20, 2007 for $7,075.00; and check # 2096 written June 13, 2007 for $800.00.

We note that no objection was made by Heather's counsel when the purchase agreement was admitted into evidence.