STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2023 CA 0145

JOHNNIE STOCKTON, III

VERSUS

SANDRA STOCKTON

JUDGMENT RENDERED:   **OCT 1 8 2023**

* * * * * * *

Appealed from The Twenty-First Judicial District Court
Parish of Livingston • State of Louisiana
Docket Number 168,238 • Division K

The Honorable Jeffery T. Oglesbee, Presiding Judge

* * * * * * *

Jenel Guidry Secrease
Ponchatoula, Louisiana

COUNSEL FOR APPELLANT
PLAINTIFF—Johnnie Stockton, III

Sherman Q. Mack
C. Glenn Westmoreland
Kimberly L. Resetar
Albany, Louisiana

COUNSEL FOR APPELLEE
DEFENDANT—Sandra Stockton

* * * * * * *

BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.

*Holdridge J. agrees in part and dissents in part for reasons assigned*

**WELCH, J.**

Johnnie Stockton, III appeals a judgment partitioning the community of acquets and gains previously existing between him and Sandra Stockton and awarding Sandra Stockton final spousal support for a period of five years. Finding neither manifest error in the trial court's underlying factual findings nor an abuse of the trial court's vast discretion with regard to such matters, we affirm.

## BACKGROUND

Mr. Stockton and Ms. Stockton were married on December 7, 1985, and during their marriage, they had three children, all of whom are now majors. The parties physically separated around September 17, 2020, and on October 19, 2020, Mr. Stockton filed a petition for divorce. On October 27, 2020, Ms. Stockton filed an answer and reconventional demand, likewise seeking a divorce as well as other incidental relief.

On December 2, 2020, the parties entered into a stipulated judgment. Among other things, this stipulated judgment terminated the parties' community property regime, and it awarded Ms. Stockton exclusive use of the former matrimonial domicile, subject to the reservation of Mr. Stockton's right to seek rental reimbursement for Ms. Stockton's exclusive use of the home. The stipulated judgment also provided that beginning December 15, 2020, Mr. Stockton would "pay the mortgage, property tax, and [homeowner's] insurance on the former matrimonial domicile[,]" that he would pay "[Ms.] Stockton's vehicle note and auto insurance as interim spousal support[,]" and that he would "pay $500.00 to [Ms.] Stockton as interim spousal [support]," with no retroactive support being owed.

Mr. Stockton subsequently filed a petition to partition community property, together with a detailed descriptive list of community assets, community liabilities, and reimbursement claims. Thereafter, on November 16, 2021, a judgment of divorce was rendered and signed. Ms. Stockton subsequently filed a rule for

2

contempt, claiming that Mr. Stockton had violated the terms of the December 2, 2020 stipulated judgment and was in contempt of court because he stopped paying the mortgage, deeming it interim spousal support that was no longer owed, and a rule seeking permanent spousal support.

A trial to partition the community and on Ms. Stockton's rule for contempt and permanent spousal support was held on September 22, 2022. A joint detailed descriptive list setting forth both parties lists of community assets, community liabilities, and reimbursement claims, as well as their concurrences and traversals was offered into evidence. As evidenced by the joint detailed descriptive list, the partition portion of the trial involved numerous claims between the parties. However, of particular importance to this appeal were the following issues: (1) the value and allocation of the community enterprise, Stockton Paint Company; (2) the value and allocation of community movables that were located in the matrimonial domicile until it was sold and that were thereafter disposed of by Ms. Stockton; (3) Ms. Stockton's reimbursement claim for community funds used to purchase and improve a camp that was Mr. Stockton's separate property, which was destroyed by Hurricane Ida (but was insured); and (4) Mr. Stockton's reimbursement claim for one-half of the fair market rental value of the matrimonial domicile due to Ms. Stockton's exclusive use and occupancy of that home.

At the conclusion of trial, the trial court took the matter under advisement, and thereafter, on October 17, 2022, issued written reasons for judgment partitioning the community, adjudicating the reimbursement claims of the parties, and awarding Ms. Stockton permanent spousal support. With regard to the community property partition issues pertinent to this appeal, the trial court valued Stockton Paint Company at $202,000.00, which was based on the testimony of Michelle Avery, an expert witness, and it allocated that asset to Mr. Stockton. Further, the trial court, noting the "inherent lack of evidence" regarding the value of the community

3

movables that were previously located in the matrimonial domicile, determined that those community movables had no inherent value, as those items were donated or disposed of by Ms. Stockton following the sale of the matrimonial domicile and neither Mr. Stockton nor Ms. Stockton made arrangements to preserve those items. Therefore, the trial court did not place a value or allocate any of those movables. The trial court granted Ms. Stockton's reimbursement claim for one-half of the community funds that were used to acquire and improve the camp that was Mr. Stockton's separate property in the amount of $45,000.00. The trial court also granted Mr. Stockton's claim for reimbursement for one-half the fair market rental value of the matrimonial domicile due to Ms. Stockton's exclusive use, set the fair market rental value at $722.00, which was the amount of the monthly mortgage note on the home, and awarded him reimbursement in the total amount of $7,581.00. With regard to permanent spousal support, the trial court found that Ms. Stockton was free from fault in the termination of the marriage, that Ms. Stockton was in need of support, and that Mr. Stockton had the ability to pay support. Therefore, based on the evidence, the trial court awarded Ms. Stockton permanent spousal support in the amount of $300.00 per month for a period of five years from the termination of her interim spousal support on May 15, 2022.

A judgment in accordance with the trial court's written reasons for judgment was signed on November 15, 2022. Mr. Stockton now appeals, challenging the trial court's ruling with regard to the value and allocation of Stockton Paint Company; the value of and failure to allocate to Ms. Stockton the community movables that were in the matrimonial domicile until it was sold; Ms. Stockton's reimbursement claim for community funds that were used to purchase and improve the camp that was Mr. Stockton's separate property; the fair market rental value placed on the former matrimonial domicile by the trial court in adjudicating his reimbursement claim in that regard; and its award of permanent spousal support to Ms. Stockton.

4

## COMMUNITY PROPERTY PARTITION

When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the matrimonial regime or thereafter, may institute a community property partition. La. R.S. 9:2801(A).

The court shall partition the community by valuing the assets as of the time of trial on the merits, determining the liabilities, and adjudicating the claims of the parties. La. R.S. 9:2801(A)(4)(a). The court shall divide the community assets and liabilities so that each spouse receives property of an equal net value. La. R.S. 9:2801(A)(4)(b). The court shall allocate or assign to the respective spouses all of the community assets and liabilities. La. R.S. 9:2801(A)(4)(c). In deciding to whom an asset or liability shall be allocated, the court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances the court deems relevant. La. R.S. 9:2801(A)(4)(c).

A trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error or unless clearly wrong. **Berthelot v. Berthelot**, 2017-1055 (La. App. 1st Cir. 7/18/18), 254 So.3d 800, 806. In valuing assets, the trial court is not required to accept, at face value, the valuation placed on assets by either spouse. If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed. **Berthelot**, 254 So.3d at 816; **Rao v. Rao**, 2005-0059 (La. App. 1st Cir. 11/4/05), 927 So.2d 356, 360-361, writ denied, 2005-2453 (La. 3/24/06), 925 So.2d 1232. Furthermore, the trial court's allocation or assigning

of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. **Berthelot**, 254 So.3d at 808. Likewise, reimbursements are factual determinations and absent manifest error or an abuse of discretion, the trial court's decision should not be disturbed on appeal. **Pierce v. Pierce**, 2019-0689 (La. App. 1st Cir. 2/21/2020), 298 So.3d 902, 911

On appeal, Mr. Stockton contends that the trial court erred in valuing Stockton Paint Company at $202,000.00 and in allocating it to him. According to the record, during the parties' marriage, Mr. Stockton re-started Stockton Paint Company, which was a company that Mr. Stockton and his father had started. Mr. Stockton testified that the business does approximately 90% commercial painting, that it employs himself and the parties' major son, and that it consists of four ladders, two spray rigs, and Mr. Stockton's personal cell phone number. According to Mr. Stockton, Stockton Paint Company had a value of $53,000.00 and he was willing to have it valued at $50,000.00 and allocated to Ms. Stockton in the partition.

On the other hand, Ms. Stockton offered the testimony of Michelle Avery, a Certified Public Accountant who is also certified in business evaluations. Ms. Avery was retained by Ms. Stockton for the purpose of valuing Stockton Paint Company. In connection with Ms. Avery's testimony, a report by Ms. Avery was also introduced, which explained Ms. Avery's methodology in determining the value of Stockton Paint Company. According to Ms. Avery's testimony and report, she considered two approaches to valuing Stockton Paint Company: the income-based approach, which yielded a value of $390,000.00 and the market-based approach, which yielded a value of $182,000.00. Ms. Avery explained that the income-based approach is the value of the company with goodwill, whereas the market-based approach excludes goodwill. According to Ms. Avery's report, as of December 21, 2021, Stockton Paint Company had a value of approximately $202,000.00. Ms. Avery explained that this number was based on the value from the market-based

approach of $182,000.00 (the value of the company without Mr. Stockton's goodwill) plus the sum of $20,000.00, which was the amount of excess working capital that was in the company's bank account.

In its written reasons for judgment, the trial court found that Ms. Avery "had completed a comprehensive review of the company[,] which included her review of similar situated companies, the bank statements and tax information for the company, including the revenue history for the last five years." The trial court also found Ms. Avery's testimony "very [informative] and enlightening regarding the methodology and analysis regarding her valuation" of Stockton Paint Company. The trial court further found that, despite Mr. Stockton's testimony that the "company was a one-man show with only his son as a consistent employee, the evidence suggest[ed] otherwise." Therefore, based on the testimony of Ms. Avery and the other evidence, the trial court found that Stockton Paint Company had a fair market value of $202,000.00, and it allocated that asset to Mr. Stockton.

Based on our review of the record and the evidence at trial, we find the trial court's factual finding that Stockton Paint Company had a value of $202,000.00 to be reasonably supported by the record, particularly the testimony of Ms. Avery and, as such, it is not manifestly erroneous. While Mr. Stockton obviously disagreed with Ms. Avery's opinion and the method that she used to place a value on the business, the trial court's decision to credit the testimony of Ms. Avery over that of Mr. Stockton was not manifestly erroneous. Indeed, the trier of fact is free to accept or reject the testimony of any witness, and further, its reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review. **Berthelot**, 254 So.3d at 806-807 and 809. Likewise, considering all of the evidence regarding the nature of Stockton Paint Company, how it was run during the marriage by Mr. Stockton, and the circumstances of the parties, we cannot say that the trial

7

court's decision to allocate that asset to Mr. Stockton was an abuse of its vast discretion.

Next, with respect to the valuation and/or allocation of community movables that were in the matrimonial domicile prior to it being sold, Mr. Stockton contends that the trial court should have assessed Ms. Stockton with the value of those movables since she unilaterally disposed of them. The community movables that Mr. Stockton claims that the trial court should have included were approximately fifty items, which were essentially household and personal items such as workout equipment, dishes, pots and pans, used television sets and other appliances. The trial court noted, in its reasons for judgment, that the parties disagreed about the value of the household items, furniture and movables, and that the majority of the values that the parties placed on their detailed descriptive list were "their own guess as to the value of the respective items." The trial court noted that "[i]n addition to the inherent lack of evidence regarding the valu[e] of these items," the evidence revealed that following the sale of the matrimonial domicile, Ms. Stockton knew that they had approximately thirty days in which to vacate the home and to allocate the household items acquired during the parties' marriage. The trial court further noted that Ms. Stockton testified that she sent Mr. Stockton a proposal regarding the division of the movables and she also provided him with several dates and times wherein he could retrieve any items from the home. Mr. Stockton testified that he did not agree with Ms. Stockton's allocation of the community movables or her demands as to when he could access the former matrimonial domicile. Therefore, he never went to the matrimonial domicile to retrieve any items. According to Ms. Stockton, because she had to vacate the matrimonial domicile and had nowhere to store items remaining in the home, she had to donate the items. The trial court, noting that Mr. Stockton failed to make arrangements to remove any of the community movables, but was claiming, at trial, that those movables had significant value, declined to value those

8

items, finding that had Mr. Stockton or Ms. Stockton believed those items had any inherent value, they would have made arrangements to preserve those items prior to the sale of the matrimonial domicile.

Based on our review of the record, including the lack of evidence establishing any value of those community movables, household items, or personal items, we find no error in the trial court's factual finding that those movable had no value nor in its decision not to allocate those items.

Next, with respect to reimbursement claims, Mr. Stockton challenges the trial court's decision to award Ms. Stockton reimbursement for community funds that were used to acquire and improve a camp that was Mr. Stockton's separate property, which, although destroyed by Hurricane Ida, was insured. Mr. Stockton's testimony revealed that he used $70,000.00 in community funds to acquire this camp and that he spent an additional "15, 20 thousand" in community funds to improve that camp. Based on this testimony, the trial court awarded Ms. Stockton reimbursement in the amount of $45,000.00 or one-half of $90,000.00 ($70,000.00 + $20,000.00).

On appeal, Mr. Stockton, noting that the court is required to value the assets as of the time of trial on the merits, argues that since the camp was destroyed by Hurricane Ida, it had no value. Therefore, Mr. Stockton contends that it was inequitable for Mr. Stockton to owe reimbursement in the amount of $45,000.00 for something that he no longer has. However, we find no merit to this argument.

First, and foremost, we note that La. R.S. 9:2801(A)(4)(a) provides that the court shall *partition the community by valuing the assets as of the time of trial* on the merits, determining the liabilities, and *adjudicating the claims* of the parties. Notably, the camp was not a community asset to be valued at trial and partitioned in the community—it was Mr. Stockton's separate property. Further, Mrs. Stockton made a reimbursement claim, which was a claim to be adjudicated by the trial court. Ms. Stockton's reimbursement claim was based on La. C.C. art. 2366, which

9

provides that "[i]f community property has been used during the existence of the community property regime ... for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled to reimbursement for *one-half of the amount or value that the community property had at the time it was used*." (Emphasis added).

Therefore, based on the clear and unambiguous language of this article, Ms. Stockton's reimbursement claim is based on the value the community property had at the time it was used. Further, she is entitled to reimbursement for the value of the community property at the time it was used, regardless of the value of the separate property at the time of trial. Therefore, based on the applicable law and the testimony of Mr. Stockton that he utilized $70,000.00 in community funds to acquire the camp and that he used an additional $15,000.00-$20,000.00 in community funds on improvements (for a total sum of approximately $85,000.00-$90,000.00 in community funds on his separate property), we find no manifest error or abuse of discretion in the trial court's award of reimbursement to Ms. Stockton in the amount of $45,000.00, which sum represents one-half of the value of community funds used.

Mr. Stockton also challenges the amount of reimbursement he was granted for one-half the fair market rental value of the family home due to Ms. Stockton's exclusive use of that home. Mr. Stockton's right to reimbursement in this regard is governed by La. R.S. 9:374, and it provides, in relevant part:

> B. When the family residence is community property ..., after or in conjunction with the filing of a petition for divorce, either spouse may petition for, and a court may award to one of the spouses, after a contradictory hearing, the use and occupancy of the family residence
> ....
>
> C. A spouse who, in accordance with the provisions of Subsection A or B of this Section, uses and occupies or is awarded by the court the use and occupancy of the family residence, ... shall not be liable to the other spouse for rental for the use and occupancy, except as hereafter provided.

D. In a proceeding for divorce or thereafter, a spouse may move for an award of rent at any time. After a contradictory hearing, the court may award rent to be paid by a spouse exercising exclusive use and occupancy of a residence whether by judgment or in fact. The award shall be retroactive to the date of filing of the motion, but rent shall be awarded only for the period of exclusive occupancy. The adjudication of the issue of rent and the amount thereof may be deferred to a later date by the court or by agreement of the parties. ....

As previously set forth, pursuant the December 2, 2020 stipulated judgment, Ms. Stockton was awarded exclusive use of the former matrimonial domicile, subject to the reservation of Mr. Stockton's right to seek rental reimbursement for Ms. Stockton's exclusive use of the home. There is no dispute that Ms. Stockton had the exclusive use and occupancy of the former matrimonial domicile for approximately 21 months.

At trial, in support of Mr. Stockton's reimbursement claim, he offered into evidence an email from a realtor, which set forth that the home (the former matrimonial domicile) should "rent for a [m]inimum of $2,000 a month." Therefore, he sought reimbursement in the amount of $21,000.00.[1] However, Mr. Stockton's testimony also revealed that the mortgage on the former matrimonial domicile was approximately $721.00 per month. Ms. Stockton posited that the fair market rental value of the former matrimonial domicile should be set at $722.00 (the approximate amount of the monthly mortgage note), such that Mr. Stockton's right to reimbursement for one-half the fair market value should be set at $7,581.00.[2]

The trial court, in its reasons for judgment, stated that "[b]ased upon the testimony and evidence presented, the court accepts the value of [Ms. Stockton] and awards [Mr. Stockton's] rental reimbursement claim in the amount of $7,581[.00]." On appeal, Mr. Stockton contends that the fair market rental value should have been assessed at the rate of $2,000.00 per month rather than $722.00 per month. However,

---

[1] ½ of (21 months x $2,000.00/month) = $21,000.00.
[2] ½ of (21 months x $722.00/month) = $7,581.00.00.

given the great discretion afforded to a trial court in community property partitions, the trial court is not required to accept at face value a spouse's valuation of a claim against the community. **Berthelot**, 254 So.3d at 816. Based on our review of the record and the evidence, we cannot say that the trial court manifestly erred or abused its discretion in setting the fair market rental value of the former matrimonial domicile at $722.00 per month instead of $2,000.00 per month or in its total award of reimbursement to Mr. Stockton in the amount of $7,581.00.

## FINAL PERIODIC SPOUSAL SUPPORT

Louisiana Civil Code article 112(A) provides that when a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic spousal support. The party alleging a right to permanent spousal support carries the burden of proving that he or she is free from fault. **Cauthron v. Cauthron**, 2012-0913 (La. App. 1st Cir. 2/15/13), 113 So.3d 232, 233. A spouse who petitions for permanent spousal support need not be totally blameless. **Ennis v. Ennis**, 2016-0423 (La. App. 1st Cir. 5/8/17) (unpublished), 2017 WL 1900328 *2; see also **Schmitt v. Schmitt**, 2009-0415 (La. App. 4th Cir. 12/16/09), 28 So.3d 537, 540. To constitute fault sufficient to deprive a spouse of final periodic spousal support, the spouse's misconduct must not only be of a serious nature, but it must also be an independent, contributory, or proximate cause of the separation. **Ennis**, 2017 WL 1900328 at *4; **Schmitt**, 28 So.3d at 540. Fault consists of those same actions that would have previously resulted in a for-cause divorce or marital separation: adultery, conviction of a felony, habitual intemperance or excesses, cruel treatment or outrages, public defamation, abandonment, an attempt on the other's life, status as a fugitive, and intentional non-support. **Ennis**, 2017 WL 1900328 at *4; **Cauthron**, 113 So.3d at 233-234. The trial court's determination of fault is entitled to great weight and will not be disturbed except in the case of manifest error.

12

**Ennis**, 2017 WL 1900328 at *5; **Almon v. Almon**, 97-2004 (La. App. 1st Cir. 9/25/98), 718 So.2d 1073, 1077.

Once freedom from fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. **Politz v. Politz**, 2005-2568 (La. App. 1st Cir. 8/1/07) (unpublished), 2007 WL 2193547 *3, writ denied, 2007-2137 (La. 1/7/08), 973 So.2d 728; **Noto v. Noto**, 2009-1100 (La. App. 5 Cir. 5/11/10), 41 So.3d 1175, 1180. The award for final periodic spousal support is governed by La. C.C. art. 112(B), which requires the court to consider all relevant factors including: (1) the income and means of the parties; (2) the financial obligations of the parties; (3) the earning capacity of the parties; (4) the effect of custody of children upon a party's earning capacity; (5) the time necessary for the claimant to acquire appropriate education, training, or employment; (6) the health and age of the parties; (7) the duration of the marriage; (8) the tax consequences to the parties; and (9) the existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant or a child of one of the spouses. Further, under La. C.C. art. 112(D), the amount of final periodic spousal support shall not exceed one-third of the paying spouse's net income.

The goal of a final periodic spousal support award is limited to the amount sufficient for maintenance as opposed to continuing an accustomed style of living. **Ennis**, 2017 WL1900328 at *3; see also La. C.C. art. 111. In an action for final periodic spousal support, the claimant spouse has the burden of proving insufficient means of support. **Ennis**, 2017 WL1900328 at *3. Support means a sum sufficient for the claimant spouse's maintenance, which includes the allowable expenses for food, shelter, clothing, transportation expenses, medical and drug expenses, utilities, household maintenance, and the income tax liability generated" by such support payments. *Id.* Generally, expenditures for newspapers, gifts, recreation, vacation,

13

and church tithes are not to be considered in awarding final spousal support; similarly, expenses attributable to entertainment are not necessary for a spouse's maintenance and should not be considered in fixing final spousal support. *Id.*

As with the determination of fault, the trial court's award of final periodic spousal support is given great weight, and an appellate court should only disturb a trial court's award of final periodic spousal support when there has been a clear abuse of that discretion or when the amount exceeds the statutory limit of one-third of the net income of the payor's income. **Ennis**, 2017 WL 1900328 at *3; see also La. C.C. art. 112(D).

On appeal, Mr. Stockton contends that the trial court erred in awarding Ms. Stockton permanent spousal support because she failed to prove that she was free from fault and that she had insufficient means for support.[3] According to Mr. Stockton's testimony at trial, the reason for the dissolution of the parties' marriage was a lack of affection and intimacy. He explained that Ms. Stockton "stopped wanting to do anything with [him,]" she "[w]ould't go to the camp anymore," and she "didn't sleep with [him]" but rather "[s]he slept on [an] afghan, not even [under] the same covers as [he] did, for the last six months." She also continued to go to the gym on Friday evenings, despite his request that she not do so. After Mr. Stockton told her that he wanted to talk to her, she responded that they had "nothing else to talk about," so he left.

According to Ms. Stockton, she slept under a little blanket because she was going through menopause and she not want to sleep under the comforter. Ms. Stockton also explained that she had gone to the gym on Fridays for many years, and that she would go to the camp on Fridays after the gym, which Mr. Stockton did not like, because "it was just not on his time frame." Ms. Stockton also explained that

---

[3] Mr. Stockton does not argue on appeal that he was unable to pay the amount awarded by the trial court ($300.00) or that the award exceeded one-third of his net income.

they were planning a wedding for her daughter that was at the home, and so for several months before Mr. Stockton left, she did not go to the camp because she was preparing her house and yard for the wedding. Ms. Stockton believed that the cause of the break up of their marriage was attributable to Mr. Stockton's drinking, and she agreed that they both played a part in the lack of intimacy. Ms. Stockton also testified that she did not file for divorce from Mr. Stockton, that he left her, and that she was trying to make their marriage work.

Ms. Stockton, in support of her claim for permanent spousal support, testified as to her specific monthly expenses, and she also offered her monthly income and expense affidavit. According to this evidence, her net monthly income was $1,739.00 per month, her expenses totaled approximately $2,194.00 per month, and that she was in need of approximately $455.00 per month to meet her needs of basic support. According to Mr. Stockton's testimony, his net income was approximately $4,600.00 per month. Mr. Stockton also testified as to his specific monthly expenses, which totaled approximately $4,300.00 per month, and that his ability to pay spousal support was approximately $300.00 per month.

Based on the testimony of the parties, the trial court found that Ms. Stockton was free from fault in the dissolution of the marriage, and we find no manifest error in this determination. With respect to need, the trial court specifically considered the income and expenses of the parties, and it further noted that the parties had been married for more than thirty-five years and that during this time, Mr. Stockton had been "the primary 'breadwinner' for the family." Therefore, after a careful consideration of the factors set forth in La. C.C. art. 112(B), the trial court awarded Ms. Stockton the sum of $300.00 per month for a period of five years. Considering the testimony of the parties and the evidence in the record, we find that the trial court's award was reasonable and supported by the record, and thus, we cannot say that the trial court abused its vast discretion.

## CONCLUSION

For all of the above and foregoing reasons, the November 15, 2022 judgment of the trial court is affirmed. All costs of this appeal are assessed to the appellant, Johnnie Stockton, III.

**AFFIRMED.**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

DOCKET NUMBER

2023 CA 0145

JOHNNIE STOCKTON, III

VERSUS

SANDRA STOCKTON



**HOLDRIDGE, J., dissenting in part.**

I dissent in part for not giving any value to Ms. Stockton's movables, which total approximately $2,150.00. Ms. Stockton filed a joint detailed descriptive list, wherein she judicially admitted to having certain movables which had a value of approximately $2,150.00. I further dissent and find that the trial court was manifestly erroneous in finding the rental value for the former matrimonial domicile was $722.00 a month. The rental value, at minimum, should have been set at $1,500.00 a month.