NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-439

AMOS JOSEPH CRADER, JR.

VERSUS

ALISON FAYE CRADER

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C-676-16
HONORABLE STEVE GUNNELL, DISTRICT JUDGE

**********

LEDRICKA J. THIERRY
JUDGE

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and Ledricka J. Thierry, Judges.

AFFIRMED.

**John W. Tilly**
**William Keaty, II**
**Keaty & Tilly, LLC**
**2701 Johnston Street, Suite 307**
**Lafayette, LA 70503**
**(337) 347-8995**
**PLAINTIFF-APPELLANT**
    **Amos Joseph Crader, Jr.**

**William J. Riley, III**
**409 East Plaquemines Street**
**P. O. Box 509**
**Jennings, LA 70546**
**(337) 824-9158**
**COUNSEL FOR DEFENDANT- APPELLEE:**
    **Alison Faye Crader**

**THIERRY, Judge.**

The appellant, Amos Joseph Crader, Jr., appeals a judgment on the Partition of Community Property between him and appellee, Alison Faye Crader, awarding Alison the sum of $13,113.18 and splitting costs equally between the parties. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Amos and Alison were married on March 10, 2012. A Petition for Divorce was filed by Amos on November 22, 2016. A Judgment of Divorce was rendered on November 28, 2017. Alison filed a Petition for Judicial Partition of Community Property on April 24, 2019. The parties were unable to agree on all community property issues, and a trial on the merits was set for February 23, 2023.

At the trial, Amos represented himself. In its written reasons for judgment, the trial court noted that "the parties agreed on most of the smaller community items, leaving only the question of AMOS' 401(k) account through his employer and the major liabilities of the former couple." The trial court found the value of the 401(k) was $50,203.74 as of the time of the filing of divorce. As the account was opened during the marriage, the trial court determined that Alison was entitled to half of the balance as of that date, $25,101.87. The trial court then found that there were four major liabilities: (1) a loan from One Main Financial Group, LLC, in the amount of $11,040.99, which was paid off by Amos, leaving Alison responsible for half of that amount, $5,520.49; (2) a Honda four wheeler owned by the community with a remaining balance of $8,762.40, leaving Alison responsible for half of that amount, $4,381.20; (3) a Capital One credit card with a remaining balance of $367.89, leaving Alison responsible for half that amount, $183.94; and (4) a loan with The Bank with a balance of $3,806.12, leaving Alison responsible for half of that amount, $1,903.06. After subtracting her half of the community liabilities ($11,988.69) from

her portion of the 401(k) ($25,101.87), the trial court found Alison was due a credit of $13,113.18. A final judgment in accordance with the written reasons was rendered on April 25, 2023, in favor of Alison and against Amos, awarding Alison $13,113.18 as her share of the community property and splitting court costs equally between the parties. This appeal followed.

## ASSIGNMENTS OF ERROR

Amos, represented by counsel on appeal, asserts that the trial court erred (1) in valuing a community asset as of the date of the filing of the Petition for Divorce, rather than at the time of trial; and (2) in not specifically allocating any community assets and liabilities in the Final Judgment.

## ANALYSIS

Amos argues the trial court erred in valuing the 401(k) retirement account as of the date of the filing of the Petition for Divorce, rather than at the time of trial. Generally, a "trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error." *Berthelot v. Berthelot*, 17-1055, p. 5 (La.App. 1 Cir. 7/18/18), 254 So.3d 800, 806. "If the trial court's valuations are reasonably supported by the record and do not constitute an abuse of discretion, its determinations should be affirmed." *Alford v. Alford*, 94-1464, p. 7 (La.App. 3 Cir. 04/05/95), 653 So.2d 133, 137.

In support of his argument, Amos cites La.R.S. 9:2801(A)(4)(a), which provides:

> A. When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising either from the matrimonial regime, or from the co-ownership of former community property following termination of the matrimonial regime, either spouse, as an incident of the action that would result in a termination of the matrimonial regime or upon termination of the

matrimonial regime or thereafter, may institute a proceeding, which shall be conducted in accordance with the following rules:

. . . .

(4) The court shall then partition the community in accordance with the following rules:

(a) The court shall value the assets as of the time of trial on the merits, determine the liabilities, and adjudicate the claims of the parties.

In this case, however, the trial court could not value the 401(k) at the time of trial, because Amos cashed out the 401(k) shortly after the parties filed for divorce and well before the trial began, as established by his testimony:

Q. When did you - - it's my understanding you subsequently cashed out that 401(k)?

A. I sure did.

. . .

Q. Now, was it before or after November 22nd, 2016, that you cashed out the 401(k)?

A. It was after.

Q. Okay. And when you cashed out the 401(k), did you consult with Alison about cashing this out?

A. No.

Q. Okay.

A. It was under my name, my money.

Q. And did she receive any of the money from that 401(k) when it was cashed out?

A. No, she did not. I took the money from everything I had and I paid off every single bill that we had together.

Q. Okay.

A. That's from credit cards to loans to furniture, all kind of stuff.

Q. Okay. Did you - - did you buy some property after you cashed out this 401(k)?

3

A. Yeah, I did, but I didn't - - I put down a down payment of $2,500.00. That was it.

Q. Okay. How much did you pay for the property?

A. I put $2,500.00 down. That's it.

Amos' testimony established he cashed out the 401(k) without consulting Alison and that Alison received no part of the funds. While Amos did use some of those funds to pay community debts, he also clearly did not exhaust all those funds to pay community debts and acknowledged he put a down payment on a piece of property out of the funds. The trial court, in its written reasons, set forth the fact that Alison was responsible for half of the amount of any payments made by Amos that paid off community debt, and specifically listed those payments in the reasons for judgment. That amount was then subtracted from half of the value of the 401(k) at the time of the filing of divorce, as that was the amount of the 401(k) when it was cashed out. There was no 401(k) in existence at the time of the trial, therefore, the trial court could not use the value at the time of trial as set forth in La.R.S. 9:2801(A)(4)(a).

The jurisprudence has recognized in certain situations the court may be required to use a date of value different from the time of trial. This can be seen in *Ball v. Ball*, 32,851 (La.App. 2 Cir. 3/1/00), 757 So.2d 824, where the court found that using the valuation of checking and savings accounts as of the date of the termination of the community, rather than as of the date of trial, was appropriate. The trial court noted there was a decrease in the value of the accounts at the time of trial as compared to their value at the time of the termination of the community. The court found it was appropriate to use the valuation at the time of termination of the community because the decrease in value was due to the husband's utilization of the accounts after the filing for divorce, and the husband failed to demonstrate that the

4

withdrawals served to benefit the community as a whole. Also, in *Ellington v. Ellington*, 36,943 (La.App. 2 Cir. 3/18/03), 842 So.2d 1160, *writ denied*, 03-1092 (La. 6/27/03), 847 So.2d 1269, the court held when the parties do not submit evidence of the current value of their community assets as of the time of trial of the partition action, the trial court does not err in making its valuations based upon the evidence presented by the parties which values assets as of another date. Thus, there is no merit to this assignment of error.

Amos also asserts the final judgment rendered by the trial court was defective because it did not contain decretal language allocating the community assets and liabilities. Amos argues, while the trial court in its written reasons discussed the community 401(k) and liabilities, "they are not mentioned at all in the actual Judgment on the partition of community property."

Amos cites *Patin v. Patin*, 462 So.2d 1356 (La.App. 3 Cir. 1985), *writ denied*, 466 So.2d 470 (La.1985), where it was alleged certain community property was discussed and contested at trial, and the trial court failed to allocate or dispose of that property in the judgment. This court remanded the matter to the trial court to properly dispose of the property in accordance with La.R.S. 9:2801. The facts in this case are distinguishable from *Patin*. In the present case, only Alison presented a detailed descriptive list, and Amos refused to present his own list as well as refusing to present any counter argument to the detailed list submitted by Alison regarding who owned those specific items. Therefore, the trial court did not err in relying upon the uncontested descriptive list in deciding that all things had been agreed upon by the parties, other than the 401(k) and the four community liabilities specifically discussed in the reasons for judgment.

Amos also argues that the Final Judgment did not contain sufficient decretal language allocating the community assets and liabilities and thus is defective. We

5

find no merit to this assertion. Louisiana Code of Civil Procedure Article 1918 states that "A final judgment . . . shall be identified as such by appropriate language[.]" This court has stated that "[a] valid judgment must be precise, definite, and certain. A final appealable judgment must contain decretal language, and it must name the party in favor of whom the ruling is ordered, the party against whom the ruling is ordered, and the relief that is granted or denied." *State v. White*, 05-718, p. 2 (La.App. 3 Cir. 2/1/06), 921 So.2d 1144, 1146 (quoting *Jenkins v. Recovery Tech. Inv'rs.*, 02-1788, pp. 3-4 (La.App. 1 Cir. 6/27/03), 858 So.2d 598, 600) (citations omitted). Furthermore, "a judgment cannot require reference to extrinsic documents or pleadings in order to discern the court's ruling." *Stutes v. Greenwood Motor Lines, Inc.*, 17-53, p. 2 (La.App. 3 Cir. 3/8/17), 215 So.3d 287, 289, (quoting *Thomas v. Lafayette Parish Sch. Sys.*, 13-91, p. 2 (La.App. 3 Cir. 3/6/13), 128 So.3d 1055, 1056). We find the April 25, 2023 judgment contains sufficient decretal language to constitute a final judgment in that it determines the rights of the parties and awards a precise dollar amount, i.e., $13,113.18. The parties are listed in the final judgment and the costs are split equally between each party. Thus, a third person could determine from reading the judgment that Amos is the party cast in judgment, and the amount owed by Amos to Alison without reference to other documents in the record.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to appellant, Amos Joseph Crader, Jr.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

6