**NOT FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0656

JAMIE BERTHELOT BUECHE

VERSUS

TRAVIS JOSEPH BUECHE

Judgment Rendered: __**MAR 0 5 2024**__

\* \* \* \* \*

On Appeal from the
18th Judicial District Court
In and for the Parish of Iberville
State of Louisiana
Trial Court No. 76881

Honorable Tonya S. Lurry, Judge Presiding

\* \* \* \* \*

Julie B. Distefano
Baton Rouge, LA

Attorney for Plaintiff-Appellee,
Jamie Berthelot Bueche

Allen J. Myles
Plaquemine, LA

Attorney for Defendant-Appellant,
Travis Joseph Bueche

\* \* \* \* \*

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

McClendon, J., dissents in part and assigns reasons
by CHH

**HESTER, J.**

In this community property dispute, Travis Joseph Bueche appeals the trial court judgment partitioning the community of acquets and gains previously existing between him and Jamie Berthelot Bueche. For the following reasons, we amend in part, and as amended, affirm.

## FACTS AND PROCEDURAL HISTORY

Travis and Jamie were married on August 20, 2010. On May 8, 2017, Jamie filed a petition for divorce and incidental matters requesting a judgment of separation of property, a temporary restraining order against alienation of community property, a partition of the community property, an order for the parties to file their detailed descriptive lists within 45 days of service, and exclusive use of the parties' vehicles. Travis answered the petition and filed a reconventional demand also seeking a divorce and other incidental relief. On July 20, 2017, a judgment was signed based on the stipulation of the parties, which in pertinent part, granted Jamie exclusive use of the 2014 Honda Accord; granted Travis exclusive use of the 2016 Ford F250; ordered the parties to pay the note and insurance on their respective vehicles on or before the due date; issued a judgment granting the separation of property retroactive to May 8, 2017, terminating the legal regime of community property pursuant to La. Civ Code art. 2374(C); and ordered mutual and reciprocal injunctions prohibiting the parties from alienating, encumbering, destroying, donating, or concealing community property.

A trial to partition the community property was held on April 28, 2022.[1] At the conclusion of the hearing, the trial court took the matter under advisement and issued written reasons for judgment on July 5, 2022. On November 7, 2022, the trial court signed a judgment in conformance with its written reasons partitioning the

---

[1] Our designated record does not contain the parties' detailed descriptive lists other than a copy of an unsigned Sworn Joint Detailed Descriptive List that was submitted into evidence at trial.

2

parties' community property. Travis appeals this judgment, assigning error to several rulings made by the trial court.

## STANDARD OF REVIEW

The trial court's allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. **Abreo v. Abreo**, 2021-0528 (La. App. 1st Cir. 12/22/21), 2021 WL 6069448, *3. In community property partitions, the trial court is granted much discretion in valuing and allocating assets and liabilities and is required to consider the source and nature of each asset or liability, the financial situation of each spouse, and any other relevant circumstances. See La. R.S. 9:2801(A)(4)(c), *et seq.*; **Berthelot v. Berthelot**, 2017-1055 (La. App. 1st Cir. 7/18/18), 254 So. 3d 800, 808. Given this great discretion, the trial court is not required to accept, at face value, a spouse's valuation of assets. **Berthelot**, 254 So.3d at 816.

A trial court's factual findings and credibility determinations made in the course of valuing and allocating assets and liabilities in the partition of community property may not be set aside absent manifest error. **Cosman v. Cosman**, 2022-0694 (La. App. 1st Cir. 1/10/23), 360 So. 3d 892, 896, writ denied, 2023-00299 (La. 5/2/23), 359 So.3d 1272.

## LAW AND ANALYSIS

In his first assignment of error, Travis contends that the trial court erred in finding that he committed mismanagement under La. Civ. Code art. 2369.3 when he did not pay the note on the 2016 Ford F250, causing the truck to be repossessed. Travis contends that mismanagement was not pled or argued and that no evidence was introduced to establish mismanagement. He further contends that after the truck was repossessed, it was sold for $29,200.00, leaving a negative value of $9,154.03, for which he and Jamie were each responsible for one-half.

3

Louisiana Civil Code article 2369.3 provides, "[a] spouse has a duty to preserve and to manage prudently former community property under his control in a manner consistent with the mode of use of that property immediately prior to termination of the community regime. He is answerable for any damage caused by his fault, default, or neglect." A spouse who asserts a claim under Article 2369.3 has the burden of proving the other spouse failed to act prudently in a manner consistent with the mode of use of the property immediately prior to the termination of the regime. **Ellington v. Ellington**, 36,943 (La. App. 2d Cir. 3/18/03), 842 So.2d 1160, 1172, writ denied, 2003-1092 (La. 6/27/03), 847 So. 2d 1269, citing La. Civ. Code art. 2369.3, Comments-1995, Comment (c). The trial court's determination as to the merit of the claim of mismanagement of community assets is subject to the manifest error standard of review. **Cloud v. Cloud**, 54,072 (La. App. 2d Cir. 9/22/21), 327 So.3d 1059, 1064. Bad faith is not required under La. Civ. Code art. 2369.3 because the spouse is "answerable for any damage caused by his fault, default, or *neglect*." **Gibson v. Gibson**, 96-1472 (La. App. 3rd Cir. 4/02/97), 692 So.2d 708, 710.

Travis acknowledged during his testimony that he was ordered by the trial court to pay the note and insurance for the Ford F250, that he failed to pay the note causing the Ford F250 to be repossessed, and that a judgment was rendered against him for the remaining debt. Further, there is a November 30, 2021 judgment in the record wherein the trial court found Travis in contempt for failure to pay the Ford F250 note. The trial court in its "Rulings on Contested Issues" found Travis liable under La. Civ. Code art. 2369.3. In the judgment of partition of community property, the trial court ordered that Travis was assigned the value, as well as the debt, on the Ford F250, and that Travis would be responsible for the balance or deficiency amount that was or is owed from the repossession of the Ford F250. Although the designated record does not contain all the pleadings, our review of the record and

4

evidence reveals that the issue of mismanagement was properly before the court, since Travis was previously ordered by the trial court to pay the note, the trial court previously found him in contempt for his failure to pay the note, and Travis testified that he did not pay the note. Thus, we find no manifest error in the judgment of the trial court finding Travis solely responsible for the payment of the balance or deficiency amount owed from repossession of the vehicle.

In his second assignment of error, Travis contends that the trial court erred in allocating the 2014 Honda Accord purchased during the marriage to Jamie without recognizing that he owned one-half of the asset. He further contends that he had a reimbursement claim for one-half of the truck notes he paid after termination of the community property.

The second paragraph of La. Civ. Code art. 2365 provides that if a community obligation was incurred to acquire ownership or use of a community corporeal movable required by law to be registered, and separate property of a spouse has been used after termination to satisfy that obligation, the reimbursement claim shall be reduced in proportion to the value of the claimant's use after termination of the community property regime. The value of that use and the amount of the claim for reimbursement accrued during the use are presumed to be equal. Comment (b) in the 2009 Revision Comments points out that this paragraph is new and incorporates the substantial volume of Louisiana jurisprudence, which has limited a spouse's right to reimbursement for the use of separate funds after termination of the community property regime to satisfy a community note obligation for an automobile of which the claimant spouse has the exclusive use.

The trial court awarded Jamie ownership of the 2014 Honda Accord as well as the debt and assigned Travis the value of the Ford F250 as well as the debt.[2] In

_____

[2] Under La. R.S. 9:2801(A)(4)(b) the trial court shall value the assets as of the time of trial on the merits, determine liabilities, and adjudicate the claims of parties. In the judgment of partition of community property, the trial court assigned the Ford F250 to Travis, and valued it at $54,538.20.

5

its written reasons, the trial court stated, "in order to reach the equitable 'presumption' found in Article 2365 that the use was equal to the debts, this court assigned each party their vehicle at the value of the debt on it, resulting in the debt canceling the asset for both parties." In so ordering, the trial court again pointed out the duty of each party to preserve and prudently manage the former community property. We find no abuse of the trial court's broad discretion in allocating Jamie sole ownership of the Honda Accord valued at $12,000.00 and denying Travis's reimbursement claim for one-half of the notes paid on the Ford F250 where the parties were previously awarded exclusive use of and ordered to pay the note on their respective vehicles by a prior judgment.

In his third assignment of error, Travis contends that the trial court erred in awarding reimbursement to Jamie for the payment of a Card Service Center credit card and a Sandals Bank of America credit card that were acquired by Jamie before the marriage. The trial court granted Jamie reimbursement from Travis in the amount of one-half of $9,035.01 for the Card Service Center account and in the amount of one-half of $8,968.05 for the Sandals Bank of America card. The trial court noted that some debt on the Sandals card was honeymoon debt incurred before the marriage, but clearly for the common interest of the spouses. The trial court determined that "Although the account was opened by Jamie before the marriage, the record contained no evidence to show the exact balance due at the time of marriage, or the account activity during the marriage, or that the charges made on the account during the marriage were not for the common interest of the parties."

Louisiana Civil Code article 2360 provides that "[a]n obligation incurred by a spouse during the existence of a community property regime for the common

---

The trial court also assigned the debt on the Ford F250 to Travis in an equal amount. Because the Ford F250 was surrendered before the trial, it was no longer an asset of the community as of the time of the trial, and the trial court erred in assigning any value to the Ford F250. However, because the trial court assigned the vehicle at the same value of the debt which had been replaced by the deficiency judgment, the amounts were offset and the final calculation was not affected.

6

interest of the spouses or for the interest of the other spouse is a community obligation." Louisiana Civil Code article 2363 provides that an obligation incurred by a spouse prior to the establishment of the community property regime is a separate obligation. Article 2360 encompasses a two-prong requirement that the obligation be incurred during the existence of the community property regime as well as be for the common interest of the spouses. Therefore, we find the trial court legally erred in concluding that any honeymoon debt incurred before the marriage was a community obligation since it was for the common interest of the spouses. Accordingly, our review of this assignment of error is *de novo*. See **Evans v. Lungrin**, 97-0541, 97-0577 (La. 2/6/98), 708 So.2d 731, 735.

Jamie testified that the Sandals card was opened prior to the marriage to pay for their honeymoon in the Bahamas, and the Card Service Center credit card was used for everyday expenses. Jamie testified that she continued to pay toward the balance owed on the card balances after the parties separated and eventually paid the cards off in full. Jamie introduced post-divorce statements from both credit cards establishing the balance owed at the time the petition for divorce was filed in May of 2017 showing that the balance had been paid. The record contains no evidence to establish the balance due on either credit card on the day the parties were married. Furthermore, there was limited evidence introduced to show the activity on the cards during the parties' seven-year marriage. The only statements in the record showing payments made on the cards during the marriage are from February through May 2017 showing charges to Shell Oil, Winn-Dixie, ExxonMobil, and interest charges. There was some testimony that the Sandals card was used to pay for the honeymoon, which presumably would have been incurred at least in part before the marriage and therefore separate debt. However, the record does not state what if any amount currently due on the credit cards was incurred before the marriage, if that amount was paid with community or separate funds, and what amount currently due on the

7

credit cards was incurred during the marriage. Obligations incurred by a spouse during the existence of the community property regime are presumed to be community obligations. La. Civ. Code art. 2361. Considering Jamie's testimony that the credit cards were used for everyday expenses during the parties seven-year marriage, the limited evidence showing the activity on the cards, and the presumption that obligations incurred by a spouse during the existence of the community property regime are presumed to be community obligations, we agree, albeit for different reasons, that the credit card debt existing at termination of the community was a community obligation that Jamie paid and that she is entitled to reimbursement. See **Manno v. Manno**, 2001-2138 (La. App. 1st Cir. 10/2/02), 835 So.2d 649, 651-52, (holding that the trial court erred in finding credit card debt incurred during a six year marriage on a credit card opened by the wife before the marriage in her maiden name was not a community obligation where the record was without evidence to establish the amount of the balance due at the time of the marriage or that the charges made on the account during the marriage were not for the common interest of the parties.)

In his fourth assignment of error, Travis contends that the trial court erred in awarding Jamie a reimbursement for one-half of the reduction of the principal on Travis's separate property home where the parties resided during the marriage because there was no evidence introduced to support the reimbursement. The trial court awarded Jamie a reimbursement in the amount of one-half of $3,317.46 for the principal reduction in Travis's separate property home. During Jamie's testimony, she said she was seeking reimbursement for the reduction in the home mortgage principal balance, but when asked if she had any knowledge of what that amount would be, she responded, "I do not." The record before us on appeal contains no evidence of the mortgage payments made on Travis's home during the parties' marriage. Jamie correctly points out that if community property had been used

8

during the existence of the community property regime to satisfy a separate obligation of a spouse, the other spouse would be entitled to reimbursement for one-half of the amount or value that the property had at the time it was used. See La. Civ. Code art. 2364. However, it is impossible to determine from the evidence in the record whether the mortgage on Travis's home was paid with community funds and, if so, the amount of any such payment. Therefore, we find merit to this assignment of error and amend the judgment to reduce the reimbursement owed to Jamie by one-half of $3,317.46, or $1,658.73.

In his fifth assignment of error, Travis contends that the trial court erred in not ordering a Qualified Domestic Relations Order (QDRO) to divide Jamie's 401K retirement account. Travis further argues that the trial court failed to order that, before the monetary value of the 401K could be determined, a loan made by Jamie after the termination date of the community should be returned to the calculation. In the judgment, the trial court ordered that each spouse was entitled to a one-half interest in the 401K account from the date the parties were married on August 20, 2010, until the termination of the community of acquets and gains on May 8, 2017 together with any earnings or losses on their half. The judgment appropriately recognizes and declares Travis's interest in Jamie's 401K account. The loan Travis is referencing was taken out after the termination of the community of acquets and gains and does not affect the calculation of the amount to which he is entitled. Accordingly, we find no merit to this assignment of error.

In his sixth assignment of error, Travis contends that the trial court erred in ordering him to pay his equalizing payment from his portion of Jamie's 401K and prohibiting him from filing bankruptcy. The judgment provides that Travis owes Jamie an equalizing payment in the amount of $12,802.25 and that if Travis did not pay Jamie the equalizing payment within forty-five days of the judgment his interest in Jamie's retirement account would be reduced by the amount equivalent to the

9

reimbursement claim, plus any early withdrawal penalties of 10% and tax penalties on the withdrawal of 20% as an estimate of Jamie's adjusted tax rate. The judgment also provides that "the obligations set forth herein between them shall not be subject to discharge in bankruptcy under any circumstances." Louisiana Revised Statute 9:2801(A)(4)(d) provides that "[i]n the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security."

As noted, the trial court's allocation or assigning of assets and liabilities in the partition of community property is reviewed under the abuse of discretion standard. This matter lies within the discretion of the trial court, and based on the record before us, we find no abuse of discretion by the trial court in imposing specific terms if Travis failed to timely remit the equalizing payment.

As for bankruptcy, the judgment determines that the obligations in the judgment are not subject to discharge in bankruptcy, but the judgment does not prevent Travis from filing for bankruptcy. Pursuant to 11 U.S.C. § 523(a)(15):

> A discharge under section 727, 1141, 1192 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt- ...to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit. (Footnote omitted.)

Jamie's claim for the equalizing payment incurred by Travis arose out of or in connection with the parties' divorce, and fits within the exception to discharge bankruptcy set forth in Article §523(a)(15). Accordingly, we find no error in the

10

judgment ordering that the parties obligations set forth therein shall not be subject to discharge in bankruptcy.

In his final assignment of error, Travis contends that the trial court erred in failing to classify money owed to his mother as a community debt. Travis sought reimbursement for money his mother incurred for him to attend inpatient rehabilitation treatment twice during the marriage. During his testimony, Travis acknowledged that he had not yet reimbursed his mother. Travis's mother, Brenda Bueche, testified during the trial. When she was asked, "You have no intention of making Travis pay you back any money; isn't that correct," she responded, "[n]ot now." Jamie testified that Travis's parents told her shortly after the wedding that he was going to inpatient rehabilitation treatment, but she was never told that she and Travis were expected to reimburse his parents for the expenses associated with the treatment. Jamie said that she was never asked to execute any documents evidencing a loan, and had no idea they considered it a loan until it itemized as such on Travis's detailed descriptive list. Based on the evidence before us, we find no error in the trial court's determination that Travis was not entitled to reimbursement for the money expended by his mother for inpatient rehabilitation treatment.

## CONCLUSION

For the foregoing reasons, we amend the judgment to remove the $1,658.73 reimbursement awarded to Jamie for the reduction of the principal amount of Travis's debt on his separate property home and reduce the equalizing payment owed by Travis to Jamie to $11,143.52. In all other aspects, the judgment of the trial court is affirmed. All costs of this appeal are divided equally between Jamie Bueche and Travis Bueche.

**AMENDED, AND AS AMENDED, AFFIRMED.**

11

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0656

JAMIE BERTHELOT BUECHE

VERSUS

TRAVIS JOSEPH BUECHE

PMc
by CHH

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., dissenting in part.**

The majority correctly recognizes that under LSA-C.C. art. 2363 an obligation incurred by a spouse prior to the establishment of the community property regime is a separate obligation. Additionally, as set forth by the majority, LSA-C.C. art. 2360 requires that an obligation must be incurred during the existence of the community property regime and for the common interest of the spouses or for the interest of the other spouse in order to be classified as a community property obligation. With these legal precepts in mind, I find that the majority errs as the record fails to establish that the debt on the Sandals credit card was a community obligation such that Jamie was entitled to a one-half reimbursement for payments made on that card following the termination of the community property regime.

Jamie's undisputed testimony was that she opened the Sandals credit card account prior to her marriage to Travis and that she used the Sandals card to pay for their honeymoon prior to the existence of a community property regime. At trial, Jamie admitted that she had no documentation of the amount of the honeymoon debt incurred on the Sandals card before she and Travis married, but acknowledged that a week at the Sandals resort in the Bahamas "is pretty expensive." Jamie also admitted that during the marriage she only made the monthly minimum payment due on the Sandals account and that the honeymoon debt had not been paid off when the community property regime terminated. However, she vaguely stated that she was still using the Sandals card after she and Travis married "because I couldn't afford

everything on my own." Even accepting this testimony as true, Jamie's bare assertion fails to establish that any additional charges made on the Sandals card during the existence of the community were incurred for the common interest of the parties or for the interest of Travis. Further, Jamie did not testify to any specific or itemized charges on said card during the marriage, nor did she submit any statements of the Sandals credit card identifying such charges.

Therefore, I respectfully dissent in part.

2